# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA LEE LENOX, | No. 2:19-CV-1195-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 13 and 16.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

> Step 1  Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2  If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3  If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 25, 2016. See CAR 18.[1] In the application, Plaintiff claims disability began on July 29, 2016. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on February 1, 2018, before Administrative Law Judge (ALJ) Sara A. Gillis. In a June 8, 2018, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): major depressive disorder, post-traumatic stress disorder, anxiety disorder, right shoulder strain, and obesity;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform medium work; she is unable to climb ladders, ropes, or scaffolds; she can frequently crawl; she can occasionally engage in overhead reaching with the right dominant upper extremity; she can understand, remember, and apply simple job instructions; she can maintain concentration, persistence, and pace for simple job tasks; she can interact with co-workers and supervisors; she must avoid working with the public;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 20-27.

After the Appeals Council declined review on May 6, 2019, this appeal followed.

///
///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on December 9, 2019, ECF No. 12.

4

**III.  DISCUSSION**

In her brief, Plaintiff argues: (1) the Appeals Counsel improperly rejected medical opinion evidence; (2) the ALJ improperly rejected medical opinion evidence; (3) the ALJ erred in determining Plaintiff's statements and testimony are not credible; (4) the ALJ improperly rejected lay witness evidence; and (5) the ALJ's vocational findings are flawed due to improper analysis of the medical opinions and lay witness evidence.

**A.     Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035,

5

1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In determining Plaintiff's residual functional capacity at Step 4, the ALJ evaluated the medical opinion evidence which had been submitted as of the date of the administrative hearing. See CAR 24-25. Specifically, the ALJ evaluated opinions offered by: (1) agency consultative reviewing psychologist Eugene Campbell, Ph.D. (Exhibit 1A); (2) agency examining psychologist Megan Stafford, Psy.D. (Exhibit 8F); (3) agency consultative reviewing psychiatrist E. Harrison, M.D. (Exhibit 3A); (4) agency examining physician Jonathan Schwartz, M.D. (Exhibit 4F); (5) agency consultative reviewing physician B. Sheehy, M.D. (Exhibit 1A); and (6) agency consultative reviewing physician G. Williams, M.D. (Exhibit 3A). See id. The ALJ gave "great weight" to the opinions of Drs. Stafford and Campbell. See id. at 24-25. The ALJ gave "little weight" to the opinions of Dr. Harrison. See id. at 25. The ALJ gave "great weight" to the opinions of Drs. Schwartz, Sheehy, and Williams. See id.

Following the February 1, 2018, administrative hearing, Plaintiff submitted additional evidence. See CAR 32-182. This evidence consists of medical records from The Permanente Medical Group for the period February 2018 through August 2018. See id. Included with this evidence is an August 20, 2018, one-page letter report by Benjamin Price, Psy.D.,

1   Plaintiff's treating mental health provider.  See CAR 34.  In declining review, the Appeals

2   Council stated:

> You submitted combined treatment records of Dr. Price and Dr. Auza, February 5, 2018, to August 2, 2018, 149 pages; and an Opinion Letter of Dr. Price, August 20, 2018, 3 pages.  We find this evidence does not show a reasonable probability that it would change the outcome of the decision. . . .
>
> CAR 2.

Plaintiff argues the ALJ failed to properly evaluate opinions offered by Drs. Stafford and Campbell.  See ECF No. 13, pgs. 8-10.  Plaintiff also contends the Appeals Council failed to properly evaluate opinions contained in Dr. Price's August 2018 report submitted following the administrative hearing.  See id. at 6-8.

        1.        <u>Opinions Considered by the ALJ (Drs. Stafford and Campbell)</u>

Plaintiff challenges the ALJ's evaluation of opinions offered by Drs. Stafford and Campbell.  As to these doctors, the ALJ stated:

> . . .Consultative psychologist Megan Stafford, Psy.D., examined the claimant on July 25, 2017. . . .  Dr. Stafford gave the claimant a Global Assessment of Functioning score of 55 and opined in a narrative that she could understand, remember, and perform simple tasks; she is moderately impaired in remembering and performing moderately difficult tasks; she has a mild impairment in maintaining a sufficient level of concentration, persistence, and pace to do basic work; she has a moderate impairment in completing complex work; and she has a mild impairment in interacting appropriately with supervisors and co-workers.  In a checkbox form, Dr. Stafford added that the claimant is mildly limited in: interacting appropriately with the public; responding appropriately to usual work situations and changes in a routine work setting; and maintaining sufficient levels of concentration, persistence, and pace to complete basic work. (Ex. 8F).
>
> The State agency's reviewing-source psychologist Eugene Campbell, Ph.D., completed an opinion dated October 17, 2016, and similarly stated that the claimant is capable of sustaining concentration, persistence, and pace for simple, repetitive tasks; she could learn and remember basic work instructions and tasks of 1 to 2 steps; she could follow a schedule, make decisions, and complete basis work tasks on a consistent basis; she could work with and around others; and she could adapt to changes and handle the normal stressors of fulltime employment.  (Ex. 1A).
>
> The undersigned gives great weight to Drs. Stafford and Campbell's opinions.  These opinions are based upon Dr. Stafford's thorough in-person examination of the claimant.  These opinions also adequately take into account the claimant's diligence in seeking mental health treatment within the context of her mental status examinations that show that she is

functional despite her reported symptoms.  When further considering the claimant's testimony concerning her social interaction difficulties, the above residual functional capacity provides a limitation that she must avoid working with the public.

CAR 24-25.

As to Dr. Stafford, Plaintiff contends the ALJ failed to account for the doctor's opinion insofar as it relates to difficulties relating to co-workers and supervisors, not just the public.  See ECF No. 13, pg. 9.  As to Dr. Campbell, Plaintiff argues the ALJ failed to account for the doctor's opinion that Plaintiff can learn and remember one- to two-step job tasks.  See id. at 9-10.

          a.        Ability to Relate to Others

In a Medical Source Statement, Dr. Stafford opined Plaintiff has a mild impairment in interacting appropriately with supervisors, co-workers, and the public.  See CAR 626-28 (Exhibit 8F).  More specifically, Dr. Stafford explained that Plaintiff is "capable of adequately communicating, although she stuttered, and therefore appears to have a mild impairment in her ability to appropriately interact with supervisors and co-workers at this time."  Id. at 626.  Dr. Stafford also opined that Plaintiff's ability to interact with the public is mildly impaired.  See id. at 628.  The form used by Dr. Stafford defines "mild" as: "slight limitation in this area, but the individual can generally function well."  Id. at 627.

According to Plaintiff:

> The ALJ purported to give great weight to this opinion, finding it consistent with the evidence. (Tr. 24.) However, the ALJ's RFC finding failed to address all of the limitations in social functioning assessed by Dr. Stafford. As can be seen above, Dr. Stafford opined Plaintiff would be equally as limited in dealing with supervisors and coworkers as she would in dealing with the general public. (Tr. 628.) The ALJ's RFC finding only addressed interactions with the public. (Tr. 22.) The ALJ translated Dr. Stafford's opinion that Plaintiff would be mildly limited in dealing with the public into an RFC finding indicating she must avoid public contact. The ALJ then found no limitation at all in dealing with coworkers or the public. This is inconsistent. . . .

ECF No. 13, pg. 9.

///

///

8

The Court does not agree that the ALJ's residual functional capacity finding – limiting Plaintiff with respect to interaction with the public but not co-workers and supervisors – is inconsistent with the opinion of Dr. Stafford, which the ALJ accepted.  Though Dr. Stafford opined that Plaintiff is limited in all three areas of social interaction, Dr. Stafford ultimately concluded Plaintiff is "capable of adequately communicating" and "can generally function well."  In the entire context of Dr. Stafford's opinions, the Court finds the ALJ did not err by failing to include mild limitations in any area of social interaction in her residual functional capacity finding.

While the ALJ concluded that Plaintiff's residual functional capacity does not allow for interaction with the public, the ALJ explained this deviation from Dr. Stafford's opinion that Plaintiff is only mildly limited in this area.  The ALJ stated: "When further considering the claimant's testimony concerning her social interaction difficulties, the above residual functional capacity provides a limitation that she must avoid working with the public."  CAR 24-25 (emphasis added).  It is clear that, rather than improperly discounting Dr. Stafford's opinion as to interaction with the public, the ALJ accepted Plaintiff's testimony as credible in this regard and included an appropriate limitation.

The Court finds the ALJ's evaluation of Dr. Stafford's opinion regarding social interactions is based on proper legal analysis and substantial evidence as a whole.

        b.      <u>Ability to Carry Out Job Instructions and Tasks</u>

Dr. Campbell, a non-examining agency doctor, proffered an opinion based on a review of records that Plaintiff is capable of learning and remembering basic one- to two-step work instructions.  See CAR 216 (Exhibit 1A).  Without citation to any authority, Plaintiff contends the ALJ erred by not including this specific limitation in her residual functional capacity finding.  See ECF No. 13, pg. 10.  The Court does not agree.  Here, the ALJ concluded Plaintiff can understand, remember, and apply simple job instructions.  See CAR 22.  This adequately encompasses one- to two-step instructions.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

///

1          2.      <u>Opinions Considered by the Appeals Council (Dr. Price)</u>

2          Following the administrative hearing, Plaintiff submitted medical records and a report from Dr. Price, which was considered by the Appeals Council.  <u>See</u> CAR 32-182.  In declining review, the Appeals Council stated the ". . .evidence does not show a reasonable probability that it would change the outcome of the decision. . . ."  CAR 2.  Relying on <u>Ramirez v. Shalala</u>, 8 F.3d 1449 (9th Cir. 1993), Plaintiff contends the Appeals Council's statement fails to constitute an appropriate evaluation of Dr. Price's opinions.  <u>See</u> ECF No. 13, pgs. 6-8.

          In <u>Ramirez</u>, the Ninth Circuit considered a medical opinion reviewed for the first time by the Appeals Council following an ALJ's decision.  <u>See</u> 8 F.3d at 1451.  Because the Appels Council reached the merits of the case by concluding the new evidence would not have changed the ALJ's hearing decision, and because the Commissioner did not contend the evidence should not be considered, either by the Appeals Council or on appeal to the circuit court, the Ninth Circuit determined that the basis of the Appeals Council's decision was reviewable on appeal.  <u>See</u> <u>id.</u> at 1451-52.  The court concluded that the Appeals Council's determination as to the new evidence was part of the Commissioner's final decision and could be reversed if not based on substantial evidence or appropriate legal analysis.  <u>See</u> <u>id.</u> at 1451.

          Applying <u>Ramirez</u>, this Court agrees that the Appeals Council's evaluation of Dr. Price's opinions is subject to the same standards as if the ALJ had evaluated the opinions in the first instance.  In his August 20, 2018, letter report, Dr. Price stated:

> Although Mrs. Lenox has made gains in symptoms and related functional impairment, these gains have to date appeared transient and relatively brief.  She continues to report high levels of distress and impaired functioning across multiple functional domains.  Based on the Adult Outcomes Questionnaire (AOQ; a tool used to measure overall distress and monitor treatment effectiveness), she entered treatment with an overall Global Distress Score (GDS) of 35 (October 2016), which is considered to be a severe level of distress.  At her most recent individual therapy appointment, Mrs. Lenox reported a GDS of 31: this suggests some improvements in her symptoms but remains in the severe range of overall distress.  Most recently, Mrs. Lenox has reported increasing difficulty leaving her home with worsening depression and anxiety symptoms.

CAR 34.

According to Defendant, the Appeals Council's conclusion as to Dr. Price's report is sound because the report does not recite any opinions as to Plaintiff's ability to engage in work activities. See id. at 27-28. The Court agrees in the context of evaluation of medical opinions.[2] Though Dr. Price stated that "symptoms remain in the severe range" despite "improvements in her symptoms," Dr. Price did not render any opinions as to how these symptoms affect Plaintiff's ability to perform work activities. In her brief, Plaintiff states that Dr. Davis opined "Plaintiff's ability to perform work activity on a regular and continuing basis was not restored." ECF No. 13, pg. 7. Plaintiff misreads the doctor's report. Dr. Davis's report does not mention work activity. Rather, it discusses symptoms.

### B. **Credibility**

The Commissioner determines whether a disability applicant is credible, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

---

[2] Whether Dr. Price's report and supporting evidence impacts the credibility analysis is discussed below.

11

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated the credibility of Plaintiff's statements and testimony in determining residual functional capacity. See CAR 23-24. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant testified that she stopped working in 2016 due to a mental breakdown. She has intense depression and anxiety, for which counseling and medication offer little relief. She has panic attacks when she hears loud noises. She fears leaving her house. She has difficultly being around more than one or two people. She does limited household chores. She is forgetful. She has disturbed sleep. She feels on edge every day. She takes naproxen for neck and shoulder pain. Physical therapy was helpful, but she has difficulty reaching overhead. She has tension headaches every week to every other week. She naps every day for one to two hours.

CAR 23.

In evaluating Plaintiff's statements and testimony, the ALJ stated:

> When considering the factors in Social Security Ruling 16-3p,[3] there is some evidence that is consistent with the claimant's allegations. Coinciding with the alleged onset date of disability, the claimant presented to emergency care on July 29, 2016, and reported that she "broke down" with uncontrollable crying and anxiety. (Ex. 2D/21). The claimant attended mental health treatment at Heritage Oaks Hospital Partial

---

[3] Social Security Ruling 16-3p is the Commissioner's policy interpretation guiding ALJ's in evaluating symptoms.

> Hospitalization Program from October 27, 2016, through December 1, 2016, where progress notes state that she was "[h]ighly symptomatic" and show that she had mental status examination findings including restricted affect, distracted attention, and some insight. (Ex. 3F). Thereafter, the claimant has a lengthy history of treatment at Kaiser Permanente where progress [notes] reflect many of the claimant's subjective complaints that she testified to at the hearing. Consistent with her allegations, the claimant has been given a Global Assessment of Functioning score as low as 41-50. (Ex. 2F/20).
>
> However, when considering the factors in Social Security Ruling 16-3p, there is also substantial evidence that is not entirely consistent with the claimant's allegations. For example, when the claimant discharged from Heritage Oaks Hospital on December 1, 2016, she was discharged on the basis that she "experienced some clinical improvement" and would begin treatment at Kaiser Permanente. (Ex. 3F/1). While the claimant testified that she has intense psychiatric symptoms, progress notes from Kaiser Permanente often show that the claimant demonstrated mental status examination findings including cooperative demeanor, normal speech, logical thought processes, goal-directed thought content, full orientation, fair attention, fair concentration, and fair memory despite indications of depressed and anxious mood with a congruent affect, psychomotor retardation, and stuttering. (Ex. 5F, 7F, 9F, 10F).
>
> The claimant further improved with treatment at Kaiser Permanente. By December 19, 2016, progress notes state that the claimant reported a fair response to the medication that she recently started. (Ex. 7F/23). The claimant improved to the point that whereas she alleged that she avoids driving due to fear (Ex. 3E/4), June 14, 2017, progress notes state that she was forcing herself to take small drives by herself, which "she has been able to tolerate." (Ex. 9F/166). By September 18, 2017, progress notes state that the claimant is generally anxious and agitated by loud sounds; however, she reported that she recently went to a local air show. (Ex. 9F/211). By September 27, 2017, progress notes continue to state that the claimant had a fair response to her psychotropic medication, she had no side effects, and she reported improvement in her depression and anxiety. (Ex. 9F/221). The claimant's Global Assessment of Functioning score improved to 51 to 60, representative of only "moderate" symptoms. (Ex. 9F/221).
>
> The claimant's physical condition also improved with treatment. While the claimant alleges disability as of July 29, 2016, it would not be until January 4, 2017, that she would be triaged into a pain management program at Kaiser Permanent for neck and shoulder pain. (Ex. 10F/14). The claimant would later attribute her neck and shoulder pain to stress and anxiety. (Ex. 10F/87). Even so, less than two months after her triage, February 23, 2017, progress notes state that the claimant reported that she was doing "much better" during just her third acupuncture visit. (Ex. 10F/116). By the claimant's fourth acupuncture visit on March 23, 2017, she reported continued improvement with her neck pain and she reported a pain level of 3 out of 10. (Ex. 10F/155). In fact, the claimant so improved that she told her psychiatrist on August 21, 2017, that she recently went and enjoyed kayaking. (Ex. 10F/343).

CAR 23-24.

1           Plaintiff contends the ALJ's analysis is flawed because, while the ALJ generally
referenced inconsistencies between Plaintiff's statements and the medical record, the ALJ "does
not identify specific aspects of Plaintiff's testimony which are actually inconsistent with any
specific portion of the medical record." ECF No. 13, pg. 11. Quoting Garrison v. Colvin, 759
F.3d 995, 1017 (9th Cir. 2014), Plaintiff also argues that "in 'discussing mental health issues, it is
error to reject a claimant's testimony merely because symptoms wax and wane in the course of
treatment.'" Finally, in challenging the Appeals Council's evaluation of Dr. Davis's report,
Plaintiff asserts Dr. Davis's opinions regarding the continued severity of Plaintiff's symptoms
further undermine the ALJ's credibility analysis. See ECF No. 13, pgs. 6-7.

          1.       Inconsistency with Objective Evidence

Plaintiff generally contends the ALJ failed to provide a link between the testimony found not credible and the objective evidence found to undermine it. The Court does not agree. In one sentence, the ALJ stated she found Plaintiff's statements and testimony not entirely consistent with other substantial evidence. See CAR 23. This is largely a prefatory statement. The ALJ continued her decision by explaining that the evidence shows improvement of symptoms and that this rationale is the basis for her adverse credibility finding. See id. at 23-24. The ALJ thus provided a sufficient link – she found all of Plaintiff's statements and testimony not credible based on substantial evidence of symptom improvement. The substantive issue before the Court, discussed below, is whether substantial evidence supports the ALJ's finding that improvement of symptoms undermines Plaintiff's credibility.

          2.       Improvement of Symptoms

The ALJ based her adverse credibility finding on evidence showing improvement in Plaintiff's symptoms. Plaintiff argues the ALJ may not discount her statements and testimony regarding mental health symptoms merely because symptoms wax and wane. Plaintiff also contends the ALJ's rationale is undercut by Dr. Davis's post-hearing opinion that Plaintiff's

///

///

///

1   symptoms were severe in August 2018 despite some improvement.[4]

2       As outlined above, Dr. Davis found that, as of his report in August 2018, Plaintiff
3   had shown "some improvement" in her symptoms. This finding is consistent with the ALJ's
4   analysis of the evidence through the date of the hearing in February 2018. While Dr. Davis's
5   report post-dates the hearing and could thus be considered evidence to support a new claim, the
6   Appeals Council accepted Dr. Davis's report and supporting medical records into evidence on the
7   current claim. This evidence is, therefore, before the Court in evaluating the various findings
8   supporting the Commissioner's final decision in this case.

9       The Court is concerned about the apparent lack of meaningful consideration of Dr.
10  Davis's report and medical records at the agency level. This concern is heightened because Dr.
11  Davis is Plaintiff's treating therapist and has provided the most recent assessment of record.
12  Here, the Appeals Council concluded this evidence was of no consequence because it "does not
13  show a reasonable probability that it would change the outcome of the decision. . . ." CAR 2.
14  The Court cannot agree. While Dr. Davis's report and record do not affect the ALJ's evaluation
15  of the opinion evidence because Dr. Davis did not express any opinions as to work-related
16  functional capacity, Dr. Davis expressed an opinion regarding the change in Plaintiff's mental
17  health symptoms by August 2018. This opinion is of consequence to the ALJ's adverse
18  credibility finding because that finding was based on improvement in symptoms over time.

19      Given that the Commissioner, through the Appeals Council, accepted Dr. Davis's
20  report and medical records into evidence, fairness requires a more substantive analysis of this
21  post-hearing evidence. Obviously, because this evidence was submitted and accepted after the
22  administrative hearing, the ALJ was not able to consider it at the hearing level. The Court finds
23  that a remand is appropriate to allow the Commissioner to consider at the hearing level Dr.
24  Davis's report and medical records submitted after the original hearing in this case. Specifically,
25  the ALJ should consider to what extent Dr. Davis's opinion that Plaintiff's symptoms were severe

---

[4] Plaintiff raises this argument in challenging the Appeals Council's evaluation of Dr. Davis's report to the extent it represents a medical opinion. Though, as discussed above, the Court concludes the Appeals Council did not err in this context because Dr. Davis did not render any opinions as to functional capacity, the Court will nonetheless consider Plaintiff's argument in the credibility context.

15

in August 2018 supports the credibility of Plaintiff's statements and testimony already on record.[5]

### C. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

At Step 4, the ALJ considered lay witness evidence offered by Plaintiff's husband. The ALJ stated:

> Ron Lenox, the claimant's husband, completed a Third-Party Function Report and stated that the claimant is stressed and anxious. She has difficultly communicating with others. She is reliant upon Mr. Lenox to take her to appointments. She wakes up at night. She is forgetful. She does not engage in hobbies. She has a short attention span. She does not follow instructions well. She does not handle stress or changes in routine well. It is difficult to deal with her. (Ex. 4E).
>
> The undersigned gives little weight to Mr. Lenox's observations when considering Drs. Stafford and Campbell's professional and supported opinions. Furthermore, Mr. Lenox's observations are not entirely consistent with material evidence including the claimant's mental status examination findings while treating at Kaiser Permanente. Accordingly, the undersigned gives little weight to Mr. Lenox's observations.
>
> CAR 25-26.

///

---

[5] The Commissioner, of course, is free to order a new hearing, re-open the record, or provide whatever additional relief the Commissioner deems appropriate.

16

Plaintiff contends the ALJ erred as to Mr. Lenox's lay witness evidence because, "[c]ontrary to the ALJ's assertions, Mr. Lenox's statements are consistent with the objective testing done by Dr. Stafford which showed borderline intellectual functioning and memory deficits." ECF No. 13, pg. 13.

On the argument presented, the Court is not persuaded. At Step 4, the ALJ was asked to determine what Plaintiff can do in a work setting despite functional limitations imposed by her severe impairments. Mr. Lenox's statements corroborating test results supporting any particular diagnosis do not speak to work-related functional capacity. To the extent Mr. Lenox provided statements of symptoms and work-related limitations consistent with those described by Plaintiff, the ALJ's rationale for discounting Plaintiff's credibility is sufficient as to this lay witness evidence. See Valentine, 574 F.3d at 694.

This latter finding, of course, presumes an adequate rationale supporting the ALJ's adverse credibility finding. As discussed above, the Court has sufficient concerns with the ALJ's credibility analysis, which was rendered without the benefit of Dr. Davis's report and medical records, to conclude a remand is appropriate. As evaluation of lay witness evidence is often based on findings regarding the claimant's credibility, on remand the ALJ should also re-evaluate Mr. Lenox's statements.

### D.     Vocational Findings

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the

Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ concluded Plaintiff would not be disabled under the Grids if she could perform the full range of medium work. See CAR 26. The ALJ, however, also concluded that Plaintiff's ability to engage in the full range of medium work is eroded by additional limitations. See id. The ALJ examined a vocational expert to determine the extent to which additional limitations impact the occupational base. See id. Based on a hypothetical question presuming someone with the residual functional capacity described by the ALJ, as well

1  as Plaintiff's work experience, education, and age, the vocational expert identified various jobs
2  which exist in the national economy the hypothetical claimant can perform.  See id.  Accepting
3  this testimony, the ALJ concluded Plaintiff is not disabled.  See id. at 27.
4        Plaintiff contends generally that the ALJ's vocational findings at Step 5 are flawed
5  because the ALJ relied on answers to hypothetical questions that did not fully describe Plaintiff's
6  residual functional capacity.  See ECF No. 13, pg. 14.  In challenging the ALJ's analysis of the
7  medical opinion evidence, Plaintiff argues more specifically that the ALJ's vocational findings
8  are inconsistent with Dr. Stafford's opinions.  See ECF No. 13, pgs. 9-10.  According to Plaintiff,
9  Dr. Stafford's conclusion – which the ALJ accepted – that Plaintiff can perform one- to two-step job
10 tasks precludes the jobs identified by the vocational expert which formed the basis of the ALJ's
11 findings.  See id.
12       The remand ordered herein for the reasons already discussed moots Plaintiff's
13 arguments regarding the ALJ's vocational findings at Step 5.  Because the remand will necessitate
14 a new agency-level decision – perhaps after a new hearing and evidence – it will also necessitate
15 new findings at Step 5.  While these findings may be the same as have already been rendered,
16 they may not.  And, in any event, they will be based on re-evaluation of the evidence, specifically
17 Dr. Davis's report and supporting medical records submitted after the original hearing.
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 13, is granted;
2. Defendant's motion for summary judgment, ECF No. 16, is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 5, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE